IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JOSHUA BENJAMIN, a minor, by THOMAS
BENJAMIN and JANET BENJAMIN,

Plaintiffs,

v.

JAMES B. FASSNACHT, PA STATE POLICE
CORPORAL BRAY, LANCASTER COUNTY,
DAVID MUELLER, CAROLE TROSTLE,
ROBERT KLING, DREW FREDERICKS,
DAREN DUBEY and JOSEPH CHOI,

Defendants.

CIVIL ACTION
NO. 12-585

**MEMORANDUM OPINION**

**Schmehl, J.**                                                                **August 14, 2014**

**I.        INTRODUCTION**

Plaintiffs, Thomas Benjamin and Janet Benjamin, bring this suit on behalf of their

minor son, Joshua Benjamin. Plaintiffs contend that Joshua's civil rights were violated

when he was arrested and charged with summary offenses and committed to the

Lancaster County Youth Detention Center after he threatened several girls in his

neighborhood. Before the Court is the Motion for Summary Judgment of Defendants,

Officer James B. Fassnacht and Corporal Brian Bray (Docket No. 39) and the Motion for

Summary Judgment of Defendants, Lancaster County, David Mueller, Carole Trostle,

Drew Fredericks, Joseph Choi, Robert J. Kling, Jr. and Darren Dubey (Docket No. 41).

Defendants have filed a Joint Statement of Undisputed Facts, Plaintiffs have filed their

own Statement of Facts, as well as an opposition to both Motions, and all Defendants

have filed replies. For the following reasons, Defendants' motions are granted in part and denied in part.

## II.   <u>LEGAL STANDARD</u>

Summary judgment should be granted if the record, including pleadings, depositions, affidavits, and answers to interrogatories demonstrate "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. Proc. 56(c). In making that determination, the "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A fact is "material" if it might affect the outcome of the suit under the governing law and "genuine" if a reasonable jury could find for the nonmoving party based on the evidence presented on that issue. <u>Anderson</u>, 477 U.S. at 251-52.

## III.   <u>FACTUAL BACKGROUND</u>

On July 1, 2009, twelve year old Joshua Benjamin (hereinafter "Benjamin") and a friend made a flamethrower in Benjamin's backyard and were using it to shoot flames approximately one and a half feet long. (See Benjamin Dep, Ex. 1 to Defs' Statement of Facts, pp. 23-24.) Several neighborhood girls saw the flames and told their babysitter, who approached Benjamin and told him to stop playing with the flamethrower. (See Ex. 1, p. 27, Pennsylvania State Police Incident Report, Ex. 24; Thomas Benjamin Dep., Ex. 4, p. 13.) Later that day, the same neighborhood girls came to Benjamin's front yard and began teasing him. (Ex. 1, pp. 27, 29, 31.) Eventually, this turned into "hand to hand type fighting" between Benjamin and the girls. (Ex. 1, p. 31.) Benjamin admitted to grabbing the arm of one girl and saying that he could break it. (<u>Id.</u>) Benjamin also admitted to

having a small piece of aluminum that he had fashioned into a knife in his pocket at the time of the altercation which he held about an inch above the head of one of the girls. (Ex. 1, pp. 32-33.)

Later that night, Michael McLucas, the father of two of the neighborhood girls involved, called the Pennsylvania State Police and reported the incident with Benjamin. (See Dep of PSP Trooper Fassnacht, Ex. 2, pp. 28-29; Ex. 24.) Pennsylvania State Police Trooper James Fassnacht ("Fassnacht") received the report and went to the McLucas residence, where he interviewed Mr. McLucas, as well as the girls who were involved in the incident. (Ex. 2, p. 30.) One of the girls told Fassnacht that Benjamin said he was older than the girls, "so I can overpower you and kill you." (Ex. 2, pp. 30-31; Ex. 24.) The girls also informed Fassnacht that Benjamin held a metal knife above the head of one of the girls and said that he was going to kill her (Ex. 2, p. 31; Ex. 24.) and grabbed another girl by the throat and pushed her backwards. (Ex. 24.)

Fassnacht then interviewed Benjamin in the presence of his father. (Ex. 2, pp. 34-35.) Benjamin admitted to Fassnacht that he threatened to break one of the girl's arms and that he held a homemade knife over another girl's head. (Ex. 1, pp. 31-33; Ex. 2, p 44; Dep of Thomas Benjamin, Ex. 4, p. 18.) Benjamin also showed Fassnacht the homemade knife. (Ex. 2, p. 44; Ex. 4, p. 14.) The next day, Fassnacht contacted Thomas Benjamin and informed him that charges of terroristic threats and summary harassment would be filed against Benjamin. (Ex. 2, pp 47-49; Ex. 4, pp. 23-24; Ex. 24.)

On Wednesday, July 22, 2009, three weeks after the incident in question, Fassnacht filed a juvenile petition against Benjamin with Lancaster County Juvenile Probation Intake Officer Carole Trostle (hereinafter "Trostle"). (Ex. 2, pp. 38, 62; Dep of

Carole Trostle, Ex. 5, pp. 12, 16.) On Friday, July 24, 2009, Trostle informed Fassnacht

that Lancaster County Juvenile Probation was ordering Benjamin to be detained due to

the seriousness of the charges and asked Fassnacht to prepare an affidavit of probable

cause.  (Ex. 2, pp. 39, 41, 43, 70-71; Ex. 5, pp. 19-20.) Fassnacht prepared an affidavit of

probable cause, which he faxed to Lancaster County Juvenile Probation. (Ex. 2, pp. 37,

43; Affidavit of Probable Cause, Ex. 6.) On July 24, 2009, Trostle submitted a Juvenile

Petition, along with Fassnacht's affidavit of probable cause, to the Lancaster County

Court of Common Pleas. (Ex. 5, pp. 23-24; Juvenile Petition, Ex. 7.)

Although all County Defendants testified that Benjamin's detention was

authorized pursuant to a signed warrant or detainer approved and signed by a judge, as

that was procedure that was followed in this type of situation, a copy of the court order

authorizing Benjamin's detention is unavailable. (Ex. 5, pp. 21-24, 37; David Mueller

Dep, Ex. 8, pp. 22-26.; Robert Kling Dep., Ex. 10, pp. 22-23.) Fassnacht does not recall if

he ever saw a court order authorizing Benjamin's detention. (Ex. 2, pp. 41, 72.) Further,

Bray does not recall if Fassnacht showed him a copy of a court order authorizing

Benjamin's detention.  (Brian Bray Dep., Ex. 13, p. 11.)

On July 24, 2009, Fassnacht called Thomas Benjamin to inform him that his son

would be detained, and Mr. Benjamin stated that he would surrender his son that

afternoon at the Ephrata barracks. (Ex. 2, pp. 72-73; Ex. 4, pp, 25-26.) That evening,

Benjamin's parents took him to the Ephrata police barracks, where they met with

Corporal Brian Bray ("Bray"), as Fassnacht's shift had ended earlier in the day. (Ex. 2,

pp. 76-77; Ex. 1, pp. 42-42; Ex. 4, pp. 26-27; Janet Benjamin Dep., Ex. 3 at pp. 36-37.)

Bray then transported Benjamin to Lancaster County Youth Intervention Center. (Ex. 13,

p. 18.) Upon arrival at the Youth Intervention Center, Benjamin was processed and Daren Dubey ("Dubey") completed an "Unclothed/Body Cavity Search Checklist" form, on which he checked yes next to the line that stated "Juvenile detainee being committed to L.C.Y.I.C. for an offense, which if committed by an adult, would be a felony charge." (Unclothed/Body Cavity Search Form, Ex. 14.) Benjamin underwent a strip search of his person and clothing which was conducted by Dubey, during which he stood behind a curtain so only Dubey could see him as he removed his clothing. (Ex. 1, p. 21; Daren Dubey Dep., Ex. 15, pp. 39-40; Joseph Choi Dep., Ex. 16, pp. 31, 33; Ex. 14.) Defendant Joseph Choi ("Choi") sat ten to fifteen feet away during the strip search, where he could see Dubey but not Benjamin. (Ex. 15, pp. 39-40, Ex. 16, pp. 31, 33.) Benjamin was told to remove his clothing, drop his pants and underwear and bend over. (Ex. 1, pp. 21-22.) Benjamin's pants were off for about 90 seconds. (Id.)

Benjamin was detained at the L.C.Y.I.C. from Friday, July 24, 2009 through Monday, July 27, 2009, when he was released to his parents at a hearing. (Ex. 1, p. 45; Ex. 3, p. 42; Ex. 4, pp. 30-31.) On October 28, 2009, a Juvenile Hearing was held before the Honorable Christopher A. Hackman, where Benjamin entered into a Consent Decree to charges of terroristic threats and summary harassment. (Consent Decree, Ex. 19.) As part of the Consent Decree, Benjamin was required to write a letter of apology to the victims and abide by other probationary requirements. (Id.)  Benjamin completed his probation and complied with the terms of the Consent Decree and on October 10, 2010, his juvenile criminal record was expunged. (Order of Expungement, Ex. 22, Confirmation of Expungement, Ex. 23.) Plaintiffs instituted this action on February 3, 2012, and filed their Second Amended Complaint on January 7, 2013.

**IV.**   **DISCUSSION**

In Count I of their Second Amended Complaint, Plaintiffs bring a claim under section 1983 for false arrest, unreasonable search and seizure, false imprisonment and violations of due process against Defendants Mueller, Trostle, Kling, Fassnacht and Bray. In Count II, Plaintiffs set forth a loss of family consortium claim under the Fourteenth Amendment against Defendants Mueller, Trostle, Kline, Fassnacht and Bray. In Count III, Plaintiffs bring a claim under section 1983 for unreasonable search and seizure, false imprisonment, due process violations and assault and battery under state law against Defendants Dubey and Choi. Counts IV and V assert Monell claims under section 1983 against Defendants Lancaster County, Mueller and Fredericks, and Count VI alleges intentional infliction of emotional distress under state law against Defendants Lancaster County, Mueller, Trostle, Fredericks, Dubey and Choi. (See Second Amended Complaint.) For the sake of clarity, the issues contained in Defendants' Motions for Summary Judgment shall be grouped together and decided based upon the similarity of the claims.

**A.  FALSE ARREST AND FALSE IMPRISIONMENT CLAIMS CONTAINED IN COUNTS I AND III**

Count I of the Second Amended Complaint contains false arrest claims against Defendants Mueller, Trostle, Kling, Fassnacht and Bray. Count III of the Second Amended Complaint contains false imprisonment claims against Defendants Choi and Dubey. Plaintiffs allege that David Mueller ("Mueller"), as director of Lancaster County Juvenile Probation, along with probation officers Trostle and Robert Kling ("Kling"), directed Officers Fassnacht and Bray to detain Benjamin without a warrant, causing

Benjamin to be placed in the Lancaster County Youth Intervention Center from July 24, 2009 to July 27, 2009. Plaintiffs claim this resulted in Benjamin's false arrest and false imprisonment in violation of the Fourth Amendment. Defendants argue that since Benjamin did not contest the charges against him, but rather entered into a Consent Decree to the charges of terroristic threats and harassment, he cannot challenge his arrest under section 1983 due to the "favorable-termination rule" set forth in Heck v. Humphrey, 512 U.S. 477 (1994). For the reasons that follow, I find that there is no genuine issue of material fact that Plaintiff's false imprisonment and false arrest claims are barred by the Heck doctrine; therefore, I will grant Defendants' Motions for Summary Judgment as to these issues and all false arrest and false imprisonment claims contained in the Second Amended Complaint are dismissed.

The favorable-termination rule was first set out in Heck v. Humphrey, 512 U.S. 477 (1994), wherein the United States Supreme Court stated:

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus…A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983.

Heck, 512 U.S. at 486-87. In 2005, the Third Circuit interpreted Heck to mean that "a § 1983 action that impugns the validity of the plaintiff's underlying conviction cannot be maintained unless the conviction has been reversed on direct appeal or impaired by collateral proceedings." Gilles v. Davis, 427 F.3d 197, 208-09 (3d Cir. 2005).

In the instant matter, it is undisputed that Benjamin entered into a Consent Decree to the charges of terroristic threats and harassment and that the Consent Decree required him to do certain probationary things in exchange for expungement of his record pursuant to 18 Pa. C.S.A. § 9123(a)(2). (See Consent Decree at Ex. 19; Letter of Apology to Victims at Ex. 20; Motion for Expungment at Ex. 21; Order of Expungement at Exh. 22.) The remaining question is whether a consent decree results in a "favorable termination" for purposes of Heck so as to permit Plaintiffs to pursue section 1983 claims in this matter.

In Gilles, the Third Circuit found that adult Accelerated Rehabilitative Disposition ("ARD") did not result in a favorable termination under Heck and that the plaintiff's participation in ARD therefore barred his section 1983 claims.  Gilles, 427 F.3d at 211-212. The Court stated that, under Heck, "common law bars to suit apply to claims brought under § 1983" and that

> [A] §1983 malicious prosecution claim was subject to the common law requirement that the plaintiff show the prior criminal proceeding terminated in his favor. The purpose of the requirement…is to avoid parallel litigation of probable cause and guilt. It also prevents the claimant from succeeding in a tort action after having been convicted in the underlying criminal prosecution, which would run counter to the judicial policy against creating two conflicting resolutions arising from the same transaction.

Id. at 209 (citations omitted). Further, the Middle District of Pennsylvania addressed a juvenile expungement pursuant to 18 Pa.C.S.A. § 9123(a)(3) and found that it was not a favorable termination for purposes of Heck. Clark v. Conahan, 737 F.Supp.2d 239, 254 (M.D. Pa., 2010).

Several other districts have found that in cases of juveniles who were adjudicated delinquent, the Heck doctrine applies to bar section 1983 claims. Dominguez v. Shaw,

2011 WL 4543901 (D. Ariz., Sept. 30, 2011) (15 year old juvenile adjudicated delinquent for resisting arrest cannot bring section 1983 claim due to <u>Heck</u> doctrine); <u>Grande v. Keansburg Borough, et al.</u>, 2013 WL 2933794 (D.N.J., June 13, 2013) (<u>Heck</u> bars the excessive force claim of an 11 year old who was adjudicated delinquent); <u>Adkins v. Johnson</u>, 482 Fed. Appx. 318, 319 (10th Cir.) (<u>Heck</u> bars a suit for damages based on allegations that implicate the validity of numerous juvenile judgments), cert. denied, ___ U.S. ____, 133 S.Ct. 439, 184 L.Ed.2d 268 (2010); <u>Morris v. City of Detroit</u>, 211 Fed. Appx. 409, 411 (6th Cir. 2006) (a "juvenile adjudication" is the "functional equivalent" of a criminal proceeding and <u>Heck</u> therefore applies).

Moreover, Pennsylvania courts have found that a juvenile "consent decree allows for pretrial probation similar to the Accelerated Rehabilitative Disposition program available to adults." <u>Com. v. Wexler</u>, 494 Pa. 325, 333 (1981). Accordingly, I find that Plaintiffs' false arrest and false imprisonment claims must fail pursuant to <u>Heck</u>, as a successful section 1983 claim for false arrest or false imprisonment would require Benjamin's sentence to have been reversed on appeal or impaired by a collateral proceeding, which did not occur. Instead, Benjamin entered into a consent decree, similar to adult ARD, and received an expungement, which is clearly not a "favorable termination" of his terroristic threats and harassment charges. Therefore, Benjamin's section 1983 claims for false arrest and false imprisonment are barred and summary judgment is granted to all defendants on Plaintiffs' false arrest and false imprisonment claims found in Counts I and III of the Second Amended Complaint.

## B. UNREASONABLE SEARCH AND SEIZURE CLAIM CONTAINED IN COUNT III.

Count III of Plaintiffs' Second Amended Complaint also sets forth a claim against

Defendants Dubey and Choi for an allegedly unreasonable search of Benjamin upon his admission to the juvenile detention facility. Defendants present several arguments as to why Plaintiffs' unreasonable search claim should fail.  However, after a thorough review of the record, I will deny summary judgment to Defendants Dubey and Choi on this claim.[1]

Defendants first argue that Plaintiffs' unreasonable search claim fails pursuant to Florence v. Board of Chosen Freeholders of County of Burlington, 132 S.Ct. 1510 (2012). In Florence, the United States Supreme Court held that jail officials may search all detainees, regardless of the crime with which they are to be charged, who are to be released into the general population of a detention facility without reasonable suspicion. 132 S.Ct. 1510. Defendants argue that the Court broadly referred to those entering "detention centers" as "arrestees" or "detainees," and that Florence therefore applies to all detainees, even juveniles, who are committed to a detention center's general population. Defendants' reading of Florence would permit any juvenile detainee to be subjected to a strip search prior to release into the general population at a juvenile detention facility, with or without reasonable suspicion. Id. Therefore, it is Defendants' assertion that Benjamin's strip search was permissible prior to his release into the general population at the youth detention facility based on Florence.

---

[1] Defendants Fassnacht and Bray argue in their Motion for Summary Judgment that any claims against them for an illegal search of Benjamin pursuant to section 1983 must be denied due to their lack of personal involvement in the search. A review of the Second Amended Complaint in this matter  shows that it does not appear to set forth any claim against Fassnacht and Bray for the search. To the extent the Second Amended Complaint can be construed as bringing claims of unreasonable search against Fassnacht and Bray, these claims fail due to the officers' lack of personal involvement in the search. It is undisputed that neither Fassnacht nor Bray had any involvement whatsoever in the actual search of Benjamin. Further, Plaintiffs' response to Defendants' Motion for Summary Judgment does not argue that Fassnacht and Bray should be held responsible for the search of Benjamin. Accordingly, any claim contained in the Second Amended Complaint for an illegal search against Fassnacht and Bray is dismissed.

However, Plaintiffs argue that <u>Florence</u> does not apply to juveniles and therefore, does not impact the legality of Benjamin's search. It is true that the facts in <u>Florence</u> addressed strip searches of adult inmates and made no reference to juvenile detainees. Further, this court has been unable to locate a case in any district in which <u>Florence</u> was applied to juvenile detainees, thereby giving authorities the right to conduct blanket strip searches of juveniles upon admission to a detention facility. I find that <u>Florence</u> specifically addresses only adult detainees, is distinguishable from the instant matter and will not bar Plaintiffs' unreasonable search claim. Therefore, I must proceed to analyze the appropriateness of Benjamin's search by determining whether Defendants had a reasonable suspicion to perform a strip search upon him prior to his admission to the juvenile detention facility.

Defendants argue that they had a reasonable suspicion that Benjamin may have possessed a weapon or other contraband, and that the strip search was therefore permissible. Strip searches are to be upheld if they are reasonable "under the circumstances." <u>Bell v. Wolfish</u>, 441 U.S. 520, 558-59 (1979). In determining the reasonableness of a strip search, courts are to examine "the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." <u>Id.</u> at 559. "Courts have frequently held that in order to strip search detainees, the arresting officers must have a reasonable individualized suspicion that a detainee is carrying or concealing contraband." <u>Martinez v. Warner</u>, 2008 WL 2331957 (E.D. Pa. June 5, 2008). "[T]he nature of the offense for which a person is arrested may contribute to a reasonable suspicion that the person might attempt to secrete

a weapon or contraband." <u>Owens, on Behalf of Young v. County of Delaware,</u> 1996 WL 476616 (E.D. Pa., Aug. 15, 1996).

I find that there is a genuine issue of material fact as to whether Defendants Dubey and Choi had a reasonable suspicion to believe that Benjamin possessed a weapon or other contraband. Benjamin was charged with terroristic threats and harassment and used a homemade knife in the commission of these crimes. However, he was brought to the youth detention center **three weeks** after the weapon was allegedly used to threaten his victims. Further, he was brought to the detention center by Corporal Bray, and prior to being taken into custody by Bray, he was under the control of his parents. I find that there is a genuine issue as to whether a twelve year old child such as Benjamin could be a threat to himself or to the officers at the detention center, or could possibly be concealing a weapon or contraband in his body three weeks after the incident in question. Accordingly, a factual question exists as to whether Defendants Choi and Dubey had reasonable suspicion to justify a strip search of Benjamin upon his admission to the detention facility.

Further, I find that there is a genuine issue of material fact as to whether the Lancaster County Defendants did in fact have an unwritten blanket strip search policy at the youth detention center, despite the existence of the Unclothed/Body Cavity Strip Search checklist form. The existence of such a form is crucial. This form was completed by Dubey upon Benjamin's admission to the facility and was allegedly used to justify Benjamin's strip search.[2] However, Dubey testified that it was his understanding of county policy that every intake to the youth detention center was to undergo an unclothed

---

[2] I note that this checklist was completed improperly, as Dubey checked the line that stated that if Benjamin had been charged as an adult, his charge would have been a felony. This is incorrect, because if Benjamin had been charged as an adult, the charge would have been a misdemeanor.

body cavity search, despite the existence of the checklist. (Dubey Dep., Ex. 8 to Pl's Statement of Facts, pp. 30, 32.) Dubey further testified that regardless of what a juvenile was charged with, he would be subjected to an unclothed body cavity search when going through intake at the detention center. (Id., pp. 36, 52.) Defendant Choi testified that he didn't recall any juvenile who was admitted to the detention facility who was not strip searched. (Choi Dep., Ex. 9 to Pl's Stmt of Facts, p. 12.) Defendant Choi was also asked about the policy of Lancaster County regarding juvenile strip searches.  The exchange was as follows:

  Q: Is it the county policy to strip search everybody?

  A: Yes, to my knowledge.

(Id., p. 13.)

  Clearly, this testimony of Defendants Dubey and Choi presents a genuine issue of material fact as to whether Lancaster County had a *de facto* policy of strip searching every juvenile detainee who was admitted to the youth detention center, despite the existence of the search checklist form which was supposed to indicate when a search was proper and despite the law requiring a reasonable suspicion to strip search a juvenile detainee. Therefore, I will deny the motion for summary judgment of Defendants Dubey and Choi as to Plaintiffs' unreasonable search claims.

### C.  DUE PROCESS CLAIMS CONTAINED IN COUNTS I AND III.

  In Counts I and III of the Second Amended Complaint, Plaintiffs also present due process claims against all defendants. The Lancaster County defendants argue that Plaintiffs' due process claims fail as a matter of law under the "more specific provision" rule, which requires a claim for constitutional violations to be analyzed under the

standard appropriate to a specific constitutional provision, if one exists, rather than under the guise of "due process." I find that Plaintiffs' due process claims are barred because their claims arise out of an allegedly unlawful arrest, detention and search and these claims are properly analyzed under the Fourth Amendment and were thoroughly analyzed previously in this opinion. Therefore, Defendants' Motion for Summary Judgment is granted as to all "due process" claims contained in the Second Amended Complaint.

"[I]f a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process." Betts v. New Castle Youth Dev. Ctr., 621 F.3d 249, 260 (3d Cir. 2010). In this matter, Plaintiffs' claims of improper arrest, false imprisonment and search are all properly analyzed under the Fourth Amendment. Consequently, Plaintiff's due process claims in Counts I and III must be dismissed under the "more-specific-provision rule." See Betts, 621 F.3d at 261. Further, I note that in their opposition to Defendants' Motions for Summary Judgment, Plaintiffs do not set forth any argument that the due process claims should not be dismissed. Therefore, Defendants' Motion for Summary Judgment is granted as to Plaintiffs' due process claims, and all due process claims are dismissed.

### D.  LOSS OF FAMILY CONSORTIUM CLAIMS CONTAINED IN COUNT II.

Plaintiffs Thomas and Janet Benjamin have presented a claim in Count II of the Second Amended Complaint for a loss of family consortium under the Fourteenth Amendment against Defendants Mueller, Trostle, Kling, Fassnacht and Bray. This claim is a derivative claim arising from Benjamin's alleged injuries. Defendants argue that Planitiffs' loss of family consortium claim fails for several reasons, including the fact that

since Benjamin's false arrest and false imprisonment claims fail, any loss of consortium claim must also fail.

It is true that a derivative loss of consortium claim cannot be successful if a plaintiff cannot prevail on the underlying claim as a matter of law. See Robinson v. County of Allegheny, 404 Fed. Appx. 670 (3d Cir. 2010) (dismissing a derivative loss of consortium claim where the underlying constitutional claims were barred as a matter of law due to the statute of limitations). In the instant matter, Plaintiffs cannot prevail on the false arrest or false imprisonment claims due to the Heck doctrine, as discussed above. Accordingly, Plaintiffs' derivative claim for loss of consortium is barred. Therefore, I will grant summary judgment in favor of Defendants on Plaintiffs' loss of consortium claim found in Count II of the Second Amended Complaint.

### E. QUALIFIED IMMUNITY

Defendants suggest that they are entitled to qualified immunity, though they do not elaborate on the grounds for this claimed entitlement. I do not need to address the qualified immunity issue as to Defendants Fassnacht and Bray, as I have already determined that all claims against them should be dismissed. Therefore, I shall examine qualified immunity as to the Lancaster County defendants only.

The doctrine of qualified immunity provides "government officials performing discretionary functions. . . [a shield] from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). A defendant bears the burden of establishing that he is entitled to qualified immunity. See Beers-Capitol v. Whetzel, 256 F.3d 120, 142 n. 15 (3d Cir. 2001).

15

Determinations regarding qualified immunity, and its application in a given case, require a court to undertake two distinct inquiries. The court must evaluate whether the defendant violated a constitutional right. <u>Saucier v. Katz</u>, 533 U.S. 194, 201-02 (2001), abrogated in part by <u>Pearson v. Callahan</u>, 555 U.S. 223 (2009), and if the defendant committed a constitutional violation, the court must determine whether the constitutional right in question was "clearly established" at the time the defendant acted. <u>Pearson</u>, 555 U.S. 231-32. A right is "clearly established" for purposes of qualified immunity if "every reasonable official would have understood that what he is doing violates that right." <u>Ashcroft v. al-Kidd</u>, 131 S.Ct. 2074, 2083 (2011).

In the instant matter, viewing the facts in the light most favorable to Plaintiffs, as I am required to do when deciding Defendants' motions for summary judgment, I find that the alleged conduct of Defendants Dubey and Choi could be construed as violating Benjamin's constitutional right to be free from an unreasonable search, of which every reasonable officer would have known. Therefore, I will deny Defendants' motion for summary judgment on the basis of qualified immunity.

## F. <u>MONELL</u> CLAIMS CONTAINED IN COUNTS IV AND V

In order to show municipal liability under section 1983, as a general proposition, a plaintiff must show that "the alleged constitutional transgression implements or executes a policy, regulation, or decision officially adopted by the governing body or informally adopted by custom. <u>McTernan v. City of York</u>, 564 F.3d 636, 657 (3d Cir. 2009) (citing <u>Monell v. Dep't of Soc. Servs.</u>, 436 U.S. 658 (1978). In order to succeed on a <u>Monell</u> claim such as this, Plaintiff must first establish a constitutional violation.  <u>See</u> <u>Collins v. City of Harker Heights</u>, 503 U.S. 115, 123 (1992).

As discussed above, both Defendants Dubey and Choi testified that the Lancaster County Youth Detention Center had a policy of strip searching all juveniles who were detained at the facility, despite the facility having a checklist that was to be used to determine whether a strip search was warranted. Therefore, there is a genuine issue of material fact as to whether a constitutional violation occurred, and whether the County and Defendants Fredericks, as director of the LCYDC in his official capacity had a policy, practice or custom of conducting blanket strip searches and acted with deliberate indifference to the rights of the juveniles being detained at the facility.  Accordingly, I will deny Defendants' Motion for Summary Judgment as to the Monell claims against the County and Fredericks in his official capacity.[3]

### G.  STATE LAW CLAIMS

Plaintiffs have also presented state law claims for assault and battery in Count III of the Second Amended Complaint and intentional infliction of emotional distress in Count VI. Defendants argue that all state law claims should be dismissed, and Plaintiffs do not present any argument in their brief as to why these state law claims should remain.  As discussed below, I find that there is no genuine issue of material fact that all state law claims fail as a matter of law.

Plaintiffs' assault and battery claims are directed against Defendants Choi and Dubey in Count III of the Second Amended Complaint and are premised on the search of Benjamin's person when he arrived at the Youth Detention Center. First, the battery claim must fail, because battery "requires proof that the defendant acted with the intent to

---

[3] Plaintiffs have also brought a Monell claim against Defendant Mueller, the director of Lancaster County Office of Juvenile Probation, in his official capacity.  As I have previously determined that Plaintiffs' claims for false arrest and false imprisonment should be dismissed due to the application of the Heck doctrine, there is no constitutional violation committed by Defendant Mueller in his official capacity. Accordingly, there is no basis for a Monell claim to be sustained as to Defendant Mueller.

cause harmful or offensive bodily contact with the person of the plaintiff and that such contact actually followed." Dull v. W. Manchester Twp. Police Dep't, 604 F.Supp. 739, 754 (M.D. Pa. 2009). In the instant matter, Benjamin testified that he was never touched during the search.  (Ex. 1, pp. 21-22). Therefore, the battery claim must fail.

Assault "requires that the defendant act with the intent to place the plaintiff in apprehension of imminent harmful or offensive bodily contact and that the plaintiff actually experience such apprehension." Dull, 604 F.Supp. at 754. I find that this claim must also fail, as Benjamin never testified that he feared an imminent harmful touching when Dubey and Choi were conducting the strip search. Further, Dubey testified that he explained to all detainees that they would not be touched during the search. (Ex. 15, p. 29.)  Accordingly, I will grant summary judgment to Defendants on Plaintiffs' state law assault and battery claims.

Plaintiffs have also set forth a state law claim for intentional infliction of emotional distress. Intentional infliction of emotional distress is defined as "[o]ne who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another." Hoy v. Angelone, 554 Pa. 134, 150 (1998). "The conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." Id. at 151. "Only if conduct which is extreme or clearly outrageous is established will a claim [for IIED] be proven." Dixon v. Boscov's, Inc., 2002 WL 1740583 (E.D. Pa. 2002) (quoting Shaner v. Synthes, 204 F.3d 494, 507 (3d Cir.2000)). Further, to state a claim for intentional infliction of emotional distress under Pennsylvania law, a plaintiff must demonstrate some physical injury, harm or illness caused by the defendant's conduct. Fox

v. Horn, 2000 WL 49374 (E.D. Pa. Jan. 21, 2000) (citing Rolla v. Westmoreland Health

Sys., 651 A.2d 160, 163 (Pa.Super.1994)).

      In the instant matter, Plaintiffs have produced no evidence that they experienced

physical harm or severe emotional distress. Accordingly, Plaintiffs' claims of IIED are

dismissed.[4]

**V.**      **CONCLUSION**

      For the reasons set forth above, Defendants' Motions for Summary Judgment are

granted in part and denied in part. An appropriate order follows.

---

[4] Plaintiffs' Second Amended Complaint states that the defendants acted "in concert or conspiracy" with each other. To the extent Plaintiffs are making a claim against Defendants for conspiracy, I grant summary judgment on that claim as well. There is no evidence contained in the record that establishes that the defendants entered into an agreement or understanding to deprive Benjamin of his constitutional rights.